

FILED
MAR 1 4 2018
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KIETH GRUHLKE MERRILL, <br><br> PLAINTIFF AND RELATOR, <br><br> v. <br><br> THE BOEING COMPANY, <br><br> DEFENDANT. | CIVIL ACTION NO. <br><br> **SA18CA0245 DAE** <br><br> **FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> **FILED IN CAMERA AND UNDER SEAL** |

Kieth Gruhlke Merrill ("Relator") brings this action in the name of and on behalf of the United States of America ("United States") for treble damages and civil penalties arising from Defendant, The Boeing Company's ("Boeing") conduct in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"). The violations arise out of false claims for payment made to the United States, Department of Defense and its related military agencies including the United States Air Force, collectively referred to herein as the "DOD" or the "Government."

## I. BACKGROUND

1. Boeing was contracted by the Government to replace outdated and unsafe fire retardant blankets (FRB) in both Boeing 747-200 aircraft designated as Air Force One when the President of the United States is aboard. Replacement of the FRB was directed by the Federal Aviation Authority (FAA) on or about September 23, 2008 in Air Worthiness Directive (#AD 2008-23-09). The work to replace the FRB on AF1 serial # 002, which was conducted at the Boeing San Antonio Maintenance Repair & Overhall (MRO) Depot, began on or about May,

2015 and was completed on or about February, 2017. Boeing certified the work as properly completed despite knowing that the FRB was installed improperly and in some cases was missing. In addition, the new FRB that was installed throughout AF1 was manufactured in such a way that the fire retardant filling shredded at the touch, compromising its fire retardant qualities. The plane is now in service. As a result, AF1 #002 and its occupants are exposed to a heightened risk of potentially catastrophic failure as a result of fire. The contract to replace the FRB is valued at almost $100 million dollars.

2. As a result of these actions, Boeing has over-charged the Government tens of millions of dollars for critical safety work on AF1# 002 that was not been performed properly.

3. Relator informed his supervisors and Boeing management of these defects and is an "original source" of the information upon which this Complaint is based, as that term is used in the False Claims Act.

4. Relator is cooperating with federal agents investigating his allegations.

5. The facts and circumstances alleged in this Complaint have not been publicly disclosed in a criminal, civil or administrative hearing; nor in any Congressional, administrative, or government accounting office report, hearing, audit, investigation or in the news media.

## II.  FEDERAL JURISDICTION AND VENUE

6. This court has jurisdiction over this civil action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367 and 31 U.S.C. §3732.

7. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391, because Defendant Boeing's San Antonio MRO Depot, where the contract work was performed, is located in San Antonio, Texas.

### III. PARTIES

### A. Relator: Kieth Gruhlke Merrill

8. Plaintiff/Relator resides in Lakehills, Texas. He is an expert and federally licensed Air Frame and Power Plant (A&P) mechanic with over 11 years of experience in structural modifications, sheet metal work, S.T.C. installations, 100 Hr./annual inspection/phase inspections and installation of turbine/ reciprocating power plants, including engine runs. Relator is a pilot and is experienced in all aspects of flight line operations with heavy aircraft and electrical, mechanical, hydraulic and fuel systems repair/trouble shooting. Relator has four years' experience in QA inspection, test flights and return to service procedures.

### B. The United States of America

9. On or about September 2009, the United States, through the DOD and the United States Air Force entered into a multimillion dollar contract to replace the FRB on both AF1's.

### C. The Boeing Company

10. Defendant is a Delaware corporation with its world headquarters located at 1100 North Riverside, Chicago, Illinois 60606.

11. Boeing is one of the world's largest aerospace companies with divisions for commercial aircraft, integrated defense systems, military aircraft, network and space systems and global services and support. It also has a financing arm known as its "Capital" division.

12. Boeing's United States facilities are located in Pennsylvania, New Jersey, Washington, D.C., North Carolina, South Carolina, Georgia, Florida, Alabama, Kentucky, Oklahoma, Texas, New Mexico, Arizona, California, Colorado, Oregon, Washington, Alaska, Utah, Kansas, Missouri, Illinois and Ohio.

## IV. INDIVIDUAL PARTICIPANTS

13. Michael Cardenas, Floor Manager, is the Relator's immediate supervisor. He agreed with the Relator's safety concerns.

14. Douglas Singer, Senior manager (retired). He agreed that a meeting with the Boeing leadership team was necessary to discuss the Relator's concerns.

15. Kevin Bell, Director of the Executive Fleet Program which includes AF1. He took no position on safety issues at the leadership meeting.

16. Dennis Snyder, Boeing FRB Blanket Engineer. He told the Relator during the leadership meeting that he "didn't get a vote" on the safety issues being discussed.

17. Tracy Bazemore, QA Inspector. He inspected the installation and agreed with the Relator's safety concerns.

18. Terry Mitchell, Organizational Design Approval (ODA) representative. Although he inspected the installation and agreed with the Relator's safety concerns, he said ODA management in Oklahoma would not approve any corrections due to cost and scheduling concerns.

19. Robert W. Adkinsson, Director of Boeing Defense Service Mission Assurance. He told Relator that he had subsequently sent a team to inspect the AF1 #002 while it was at L3 and that they had corrected the Relator's safety concerns, but only with regard to the lower lobe Halon issue.

20. Rene Meza, QA Manager. Was present at the leadership meeting but took no position on the safety issues.

## V. FEDERAL FALSE CLAIMS ACT

21.     The False Claims Act (hereinafter referred to as "FCA"), 31 USC § 3729, was originally enacted in 1863, and was substantially amended in 1986 by the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153. The FCA was further amended in May 2009 by the Fraud Enforcement and Recovery Act of 2009 ("FERA") and again in March 2010 by the Patient Protection and Affordable Care Act ("PPACA"). Congress enacted the 1986 amendments to enhance and modernize the Government's tools for recovering losses sustained by frauds against it after finding that federal program fraud was pervasive. The amendments were intended to create incentives for individuals with knowledge of Government fraud to disclose the information without fear of reprisal or Government inaction and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf. Both FERA and PPACA made a number of procedural and substantive changes to the FCA in an attempt to ease the burden on the Government and Relator in investigating and prosecuting *qui tam* suits under the FCA.

22.     The False Claims Act generally provides that any person who knowingly presents, or causes to be presented, false or fraudulent claims for payment or approval to the United States Government, or knowingly makes, uses, or causes to be made or used false records and statements material to a false claim, or conspires to engage in such conduct, is liable for a civil penalty ranging from $5,500 up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Federal Government.

23.     In addition, the False Claim Act (31 U.S.C. § 3730(h)) prohibits and provides sanctions for retaliation against employees who report and object to fraudulent conduct. The relief provided includes: reinstatement with the same seniority status that employee, contractor,

5

or agent would have had but for the discrimination, 2 times the amount of back pay, including interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

24.     The FCA defines the term "knowingly" to include actual knowledge, actions in deliberate ignorance of the truth or falsity of the information or acts in reckless disregard of the truth or falsity of the information. No proof of specific intent to defraud is required. 31 U.S.C. §3729 (b) (1) (A) and (B).

25.     The Act allows any person having information about false or fraudulent claims to bring an action for himself and the Government, and to share in any recovery. Based on these provisions, Relator seeks, through this action, to recover all available damages, civil penalties, and other relief for the federal violations alleged herein.

## VI.     FACTUAL BASIS FOR FALSE CLAIMS

26.     Boeing manufactured both current VC-25 AF1's which were placed in service on or about *August,* 1990. Boeing has also been awarded the contract to produce the next generation of Presidential aircraft.

27.     On April 30, 2008 Boeing issued Service Bulletin # 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 for the Commercial Airplane Group. The service bulletin was to replace the fuselage insulation blankets fabricated of AN-26 cover material with potentially degraded flame retardant properties. According to the Service Bulletin, *"flame retardant properties of an insulation blanket cover material must prevent propagation. If this service bulletin is not done, insulation blanket cover material with degraded fire retardant properties can, if exposed to an ignition source, propagate flame and contribute to the spread of fire within the pressurized areas of the fuselage."*

28. Boeing had learned from operators and its own testing, that insulation blanket with AN-26 cover material can lose flame retardant properties over time, and when exposed to an ignition source can spread the fire across the surface of the insulation blanket. The work accomplished in this service bulletin replaces the AN-26 blankets with a new fire retardant cover material.

29. These concerns and "reports of in-flight and ground fires on certain airplanes manufactured with insulation blankets covered with AN-26", led the Federal Aviation Administration (FAA) to issue Airworthiness Directive for Boeing 747 Series Aeroplanes "AD/B747/387 AN-26 Insulation Blankets 1/2009". This concluded that a safety of flight issue existed and directed that the AN-26 blankets be replaced.

30. Boeing was awarded the contract to perform this job on both AF1's and work began on AF1 #002 at the San Antonio MRO Depot on or about May, 2015. Relator was assigned as the Team Lead, Lower Lube (describing the lower portion of the fuselage that his team was to work on). The other members of Relator's team who he supervised were:

    a.     Edwardo Gonzales, BEMS# 1834916

    b.     Ernesto Lopez, BEMS# 1899522

    c.     Kevin McManus, BEMS# 1135808

    d.     Mike Leal, BEMS# 1054884

    e.     Dan Hernandez, BEMS# 2339755

    f.     Raul Ramirez, BEMS# 1707447

31. Relator was not provided with the accurate schematic drawings and instructions required by the FAA for the replacement of the FRB. Relator was told by Dylon Morrow, a line blanket engineer, that they were not available and to just "copy what you see." Relator

recognized, however, that the old FRB was improperly installed and contained missing sections. As a result, the plane's primary fire suppression Halon system would likely fail, leading to a potentially catastrophic event. Relator objected to "copying" the same mistakes that were made during the old installation and reiterated his request for accurate schematic drawings and proper installation instructions.

32. This request was denied by Boeing Blanket Engineers and Relator requested a meeting to discuss his safety concerns with members of the Boeing leadership team. The meeting was held at the San Antonio MRO on or about November 3, 2015 and those attending included:

    a. Mike Cardenas

    b. Rene Meza, QA Manager

    c. Dennis Snyder

    d. Douglas Singer

    e. Kevin Bell

33. Relator again expressed his serious safety concerns about the improper FRB installation. Snyder told him, "Shop does not get a vote" on this and a decision was made to continue the work without addressing Relator's concerns.

34. While reluctantly continuing his work, Relator also observed that the FRB blanket was also being improperly installed on the upper portions of the plane. He observed that there was at least forty feet of FRB flaps had been improperly cut away and were completely missing.

35. In addition, Relator observed that the new FRB material being installed throughout the plane was defective and would easily shred at the touch, almost certainly

destroying its fire retardant qualities during the rigors of flight. This is particularly true after AF1's many years of flight service.

36. As a result of these issues, Relator said that he would not sign off on the job unless he had something in writing instructing him to do so. Relator subsequently received an email from Terry Mitchell acknowledging his concerns but saying that "cost and impact to schedule precludes improving and recertifying the design." As a result the work on AF1 was completed with improper FRB installation, missing FRB and defective FRB material.

37. Despite fearing for his job, Relator again approached Singer with his concerns in the first week of May, 2016. Singer dismissed him, saying "Take it to Ethics." On May 17, 2016 Relator made a formal complaint to the Boeing Ethics Department about his safety concerns. His complaint was bounced from department to department with no action until Relator finally received a phone call from Robert Adkinsson on or about June 1, 2016. In a long conversation, Relator reiterated his safety concerns. Adkinsson called back on or about August 1, 2016 and told Relator that the lower lobe blanket problem he identified had, in fact, subsequently been fixed while the plane was at L3 in Greensville, Texas. Adkinsson advised, however, that the missing FRB on the upper part of the plane had not been corrected because it was not part of the official complaint originally filed by the Relator.

38. Relator has subsequently reviewed documents that indicate that the lower lobe problems were, in fact, not corrected.

39. In addition, Relator believes that defective FRB was installed throughout the plane and is also being installed on AF1 #001 which is currently being modified at the San Antonio MRO.

40.     The Challenger disaster taught us that catastrophic failures, however unlikely they are believed to be, tragically occur when safety warnings are ignored.

## VII.    CAUSES OF ACTION

### First Cause Of Action

### False Claims Act
### 31 U.S.C. §3729(a) (1) (A) (2010)

41.     Plaintiff/Relator repeats and realleges each allegation contained in paragraphs numbered 1 through 40 above as if fully set forth herein.

42.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

43.     Defendant, individually and by and through its officers, agents, employees, related companies, subsidiaries and contractors, knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval in violation of 31 U.S.C. §3729(a)(1)(A)(2010).

44.     Defendant, individually and by and through its officers, agents, employees and contractors, authorized and encouraged the actions of their various officers, agents, and employees to take the actions set forth above and/or acted in deliberate ignorance of the truth or falsity of the information and/or in reckless disregard of the truth or falsity of the information.

45.     As a result of the acts of Defendant the United States Department of Defense, Air Force and other government agencies paid Defendant millions of dollars for services which were not provided, provided improperly and which used defective materials.

46.     By reason of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

47. Without the described fraudulent and illegal conduct by Defendant, the government would not have accepted or paid for these services.

48. As set forth in the preceding paragraphs, Defendant has knowingly violated 31 U.S.C. § 3729 *et seq.* and has thereby damaged the United States Government. The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false claim paid or approved.

WHEREFORE, Relator respectfully requests this Court enter judgment against the Defendant as follows:

(a) That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* provides;

(b) That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the Government and military units under the Federal False Claims Act;

(c) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which Relator necessarily incurred in bringing and pressing this case;

(d) That Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e) That the Court award such other and further relief as it deems proper.

## Second Cause Of Action

### False Claims Act—False Records and Statements
### 31 U.S.C. §3729(a) (1) (B) (2010)

49. Plaintiff/Relator repeats and realleges each allegation contained in paragraphs 1 through 40 above as if fully set forth herein.

50. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

51. Defendant by and through its officers, agents, employees, related companies, subsidiaries and contractors, by virtue of the acts described above, and for the purpose of defrauding the Government, knowingly made, used and/or caused to be made or used, false or fraudulent records or statements to get false and fraudulent claims paid or approved, within the meaning and in violation of 31 U.S.C. § 3729(a) (1) (B) (2010).

52. Defendant, individually and by and through its officers, agents, and employees, authorized and encouraged the actions of its various officers, agents, contractors and employees to take the actions set forth above and/or acted in deliberate ignorance of the truth or falsity of the information and/or in reckless disregard of the truth or falsity of the information.

53. By reason of Defendant's acts and omissions, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendant, as follows:

(a) That the United States be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* provides;

(b) That civil penalties of $11,000 be imposed for each and every false claim (including records and statements) that Defendant fabricated or caused to be presented to the Government and its military under the Federal False Claims Act;

(c) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which Relator necessarily incurred in bringing and pressing this case;

(d) That Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e) That the Court award such other and further relief as it deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, Plaintiff/Relator hereby demands a trial by jury.

Dated: March 12, 2018

Respectfully submitted,

Mark Schlein, Trial Counsel
The Florida Bar No. 000700
(*Pro Hac Vice application to be submitted*)
Diane Marger Moore
The Florida Bar No. 268364
(*Pro Hac Vice application to be submitted*)
BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: 310-207-3233   Fax: 310-207-4204
mschlein@baumhedlundlaw.com

*Attorneys for Relator,*
**Kieth Gruhlke Merrill**